IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GABRIELA AL-DAGHAMIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 17 CV 8775 |
| | ) |
| NANCY A. BERRYHILL, Acting | ) Jeffrey T. Gilbert |
| Commissioner of Social Security, | ) Magistrate Judge |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Claimant Gabriela al-Daghamin ("Claimant") seeks review of the final decision of Respondent Nancy Berryhill, Acting Commissioner of Social Security ("the Commissioner"), denying Claimant's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and Title XVI of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings including entry of final judgment. [ECF No. 7]. Claimant filed a Motion to Reverse the Decision of the Commissioner of Social Security. [ECF No. 16]. This Court has jurisdiction pursuant to 42 U.S.C. §§ 1383(c) and 405(g). For the reasons stated below, Claimant's Motion [ECF No. 16] is granted. This matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

### I. PROCEDURAL HISTORY

Claimant filed an application for DIB and SSI on May 20, 2014, alleging a disability onset date of February 14, 2009 (R. 13.) The application was initially denied on October 8, 2014, and upon reconsideration on January 20, 2015, after which Claimant requested an administrative

hearing before an administrative law judge ("ALJ"). (*Id.*) On June 13, 2016, Claimant, represented by counsel, appeared and testified at a hearing before ALJ Luke Woltering. (R. 13.) The ALJ also heard testimony from vocational expert ("VE") James J. Radke. (*Id.*)

On August 17, 2016, the ALJ denied Claimant's applications for DIB and SSI, based on a finding that she was not disabled under the Act. (R. 13-23). The opinion followed the five-step evaluation process required by Social Security Regulations ("SSRs")[1]. 20 C.F.R. § 404.1520. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity ("SGA") since Claimant's alleged onset date of February 14, 2009. (R. 15.) At step two, the ALJ found that Claimant had the severe impairments of obesity, narcolepsy, and lupus. (*Id.*) At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of the one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (R. 17.) The ALJ then assessed Claimant's residual functional capacity ("RFC")[2] and concluded:

> Claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; cannot work around hazards such as unprotected heights and exposed moving mechanical parts; and can understand, remember, and carry out simple, routine tasks but not at a production rate pace (e.g. assembly line work).

---

[1] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). Although the Court is "not invariably bound by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

[2] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

(R. 18.) Based on this RFC, the ALJ determined at step four that Claimant could not perform any past relevant work. (R. 21.) Finally, at step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Claimant could perform. (R. 22.) Specifically, the ALJ found Claimant could work as a mail clerk (DOT # 209.687-026), a laundry worker (DOT # 361.687-014), and a cleaner (DOT # 323.687-014). (*Id.*) Because of this determination, the ALJ found that Claimant was not disabled under the Act. (R. 23.) The Appeals Council declined to review the matter on October 5, 2017, making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court under 442 U.S.C. § 405(g). *See Haynes v. Baumhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000). Under such circumstances, the district court reviews the decision of the ALJ. (*Id.*) Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge

from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

### III. ANALYSIS

On appeal, Claimant asserts that the ALJ made three errors. First, Claimant contends that the ALJ improperly discounted the opinion of her treating physician. Second, Claimant argues that the ALJ's RFC determination with respect to Claimant's functional limitations is unsupported by substantial evidence. Third, Claimant asserts that the ALJ improperly assessed her subjective symptoms statement.

A.  **The Treating Physician's Opinion**

The Court first addresses Claimant's argument that the ALJ failed to give appropriate weight to the opinion of her treating physician, Dr. Jyoti Warikoo. [ECF No. 13-1] at 7. An ALJ must give controlling weight to a treating physician's opinion if it is both "well-supported" and "not inconsistent with the other substantial evidence" in the case record.[3] 20 C.F.R. § 404.1527(c)(2); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). Because a treating physician has "greater familiarity with the claimant's condition and circumstances," an ALJ may only discount a treating physician's opinion based on good reasons "supported by substantial

---

[3] Last year, the Social Security Administration ("SSA") adopted new rules for agency review of disability claims involving the treating physician rule. *See* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017). Because the new rules apply only to disability applications filed on or after March 27, 2017, they are not applicable in this case. *See id.*

4

evidence in the record." *See Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Those reasons must be "supported by substantial evidence in the record; a contrary opinion of a non-examining source does not, by itself, suffice." *Campbell*, 627 F.3d at 306.

"Even if an ALJ gives good reasons for not giving controlling weight to a treating physician's opinion, she has to decide what weight to give that opinion." *Campbell*, 627 F.3d at 308. To do this, the ALJ must, by regulation, consider a variety of factors, including: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) whether the physician was a specialist in the relevant area; and (6) other factors that validate or contradict the opinion. *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014); 20 C.F.R. § 404.1527(c)(2)–(6).

Dr. Warikoo, a psychiatrist, treated Claimant for her psychological disorders from February 2015 through April 2016. (*See* R. 660-61, 664-673.) Dr. Warikoo completed medication management reports on September 9, 2015, October 7, 2015, December 23, 2015, February 24, 2016, and April 18, 2016. (R. 664-673.) Dr. Warikoo opined in each report that Claimant displayed signs of hypomania, general anxiety disorder, post-traumatic stress disorder, and some depressive symptoms. (*Id.*) Dr. Warikoo further opined that Claimant could not work as she would be unable to remember locations and work-like procedures, understand detailed instructions, maintain attention, or complete the workday without interruptions from psychological symptoms. (R. 664-71.)

The ALJ afforded Dr. Warikoo's opinion "little weight," and offered as his sole reason that Dr. Warikoo's statements about Claimant's ability to work, remember locations and work-like

5

procedures, understand detailed instructions, maintain attention, and complete the workday without interruptions from psychological symptoms were "generally inconsistent with claimant's often noted normal attention, concentration, mood and affect, and with the extent of the claimant's activities of daily living.". (R. 17.) The Court finds, however, that the reason offered by the ALJ is insufficient to discount Dr. Warikoo's medical opinion, an error necessitating remand.

The ALJ stated that Dr. Warikoo's statements regarding Claimant's limitations "are generally inconsistent with the claimant's often noted normal attention, concentration, mood, and affect, and with the extent of the claimant's activities of daily living, discussed above." (R. 17.) But the ALJ did not fairly characterize Dr. Warikoo's clinical findings in the record. Dr. Warikoo treated Claimant for roughly a year and two months and saw her almost every two months to complete Medication Management reports. (R. 660-61, 664-673.) Dr. Warikoo's treatment notes contain additional clinical findings supportive of Claimant's limitations, including notes that Claimant reported loss of energy and concentration as well as statements that Claimant was easily distractible and had flights of ideas. (R. 660.) Further, Dr. Warikoo's treatment notes, on multiple occasions, note that Claimant had symptoms of PTSD, had manic episodes, and hypomanic symptoms that contributed to her inability to secure competitive employment. (R. 665-6, 668-71.)

Dr. Warikoo's notes are not only internally consistent but also consistent with the treatment notes of other service providers in the record. For example, Claimant saw two other treating doctors at Dr. Warikoo's practice, both of whom reported that Claimant presented with symptoms of depression and hypomania. (R. 658, 674-700.) In addition, one treating doctor noted that Claimant was aware that her "speech is sometimes fast-paced and skips from topic to topic" (R. 674.), that Claimant could not complete a binder of work to graduate from aesthetician school (R. 676, 678-80.), and that Claimant presented with "mood somewhat depressed, goes quickly from

one topic to next." (R. 690.) While the ALJ does not mention these two treating doctors, their corroboration of Dr. Warikoo's treatment notes undercuts the ALJ's assertion that his "statements are generally inconsistent with the claimant's often noted normal attention, concentration, mood, and affect." (R. 17.) Indeed, it appears not only from Dr. Warikoo's treatment notes but also the notes of two other treating doctors that Claimant often did not have normal attention, concentration, mood and affect. The ALJ apparently ignored or disregarded without any explanation Dr. Warikoo's treatment notes that supported these limitations, focusing instead only on what the ALJ perceived as contradictory evidence in the same notes. This selective "cherry picking" prevents the Court from assessing the reasonableness of the ALJ's decision to afford the opinion only "little weight." *Kaminski v. Berryhill*, 894 F.3d 870, 874-875 (7th Cir. 2018); *see Gerstner v. Berryhill*, 879 F.3d 257, 261-63 (7th Cir. 2018); *Cole v. Colvin*, 831 F.3d 411, 416 (7th Cir. 2016).

In other words, the ALJ failed to assess Dr. Warikoo's opinion in conjunction with the entirety of her treatment notes and the consistent treatment notes of other doctors. Instead, the ALJ focused on select clinical findings or notes that he believed indicated that Claimant had normal attention, concentration, mood, and affect. Courts have found this to be a flaw that supports remand for more thorough analysis. *Samuel v. Berryhill*, No. 17 C 4596, 2018 WL 1706370, at *7 (N.D. Ill. Apr. 9, 2018) (criticizing the ALJ for failing to account for treatment notes when evaluating a medical source statement); *Campbell*, 627 F.3d at 306 ("[a]n ALJ may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability.").

In addition, although the ALJ was not required to give Dr. Warikoo's opinion controlling weight, he still was required to address the factors listed in 20 C.F.R. § 404.1527 to determine

7

what weight to give the opinion. SSR 92-2p[4] states that treating source medical opinions like Dr. Warikoo's "are still entitled to deference and must be weighed using *all* of the factors provided in 20 C.F.R. § 404.1527." *Id.* (emphasis added). Here, the ALJ afforded Dr. Warikoo's opinion little weight, but failed to address many of the enumerated factors provided in 20 C.F.R. § 404.1527. Specifically, other than acknowledging that Dr. Warikoo was Claimant's treating physician, the ALJ did not discuss the extent of the treatment relationship, the frequency of examinations, the supportability of the decision, the consistency of the opinion with the record as a whole, or whether Dr. Warikoo had a relevant specialty. Dr. Warikoo specializes in psychiatry and has treated Claimant for psychological disorders from February 2015 through April 2016. (R. 660-61, 664-673.) Dr. Warikoo saw Claimant roughly every two months for a year and two months. (*Id.*) Dr. Warikoo has managed Claimant's medications and made clinical findings based on her sessions with Claimant. (*Id.*) Many of these factors may favor crediting Dr. Warikoo's opinion and "proper consideration of these factors may have caused the ALJ to accord greater weight to [Dr. Warikoo's] opinion." *Campbell*, 627 F.3d at 308. The ALJ's failure to "sufficiently account [ ] for the factors in 20 C.F.R. § 404.1527," *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013), prevents the Court from assessing the reasonableness of the ALJ's decision to give little weight to Dr. Warikoo's opinion.

For these reasons, the ALJ did not offer substantial evidence for rejecting the opinions of Dr. Warikoo, which is an error requiring remand.

---

[4] The SSA has rescinded SSR 96-2p in connection with its new rules governing the analysis of treating physicians' opinions, but that rescission is effective only for claims filed as of March 17, 2017. *See* SSR 96-2p, Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 2017 WL 3928298, at *1 (March 27, 2017).

## B. Other Issues

Because the Court remands on the errors identified above, it need not explore in detail the other arguments posited by Claimant on appeal since the analysis would not change the result in this case. However, the Court notes that as the ALJ failed to consider Dr. Warikoo's opinion that Claimant's RFC may need to be reconsidered. Neither the Commissioner nor Claimant should draw any conclusions from the Court's decision not to address Claimant's other arguments. Nor, obviously, is the Court making any determination about whether or not Claimant is disabled.

In conclusion, the Court expresses no opinion about the decision to be made on remand but encourages the Commissioner to consider all the evidence in the record, expand the record if necessary, and build a logical bridge between the evidence and her ultimate conclusions, whatever those conclusions may be. *See, e.g., Myles v. Astrue*, 582 F.3d 672, 678 ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusions"); *see Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994).

## IV. CONCLUSION

For the reasons stated above, Claimant's Motion to Reverse the Decision of the Commissioner of Social Security is granted. [ECF No. 16] The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: October 9, 2018